## In re CRITICAL PATH, INC. SECURITIES LITIGATION.

### No. C–01–0551 WHO.

United States District Court, N.D. California.

June 28, 2001.

Francis M. Gregorek, Francis A. Bottini, Jr., Betsy C. Manifold, Wolf, Haldenstein, Adler, Freeman & Herz, LLP, San Diego, CA, Nadeem Faruqi, Shane T. Rowley, Faruqi & Faruqi, for Arnold Cohen.

Jeffrey H. Squire, Ira M. Press, Kirby, McInerney & Squire, New York City, Jill M. Manning, Kirby, McIerney & Squire, Novato, CA, for Renee Sternheim.

Kevin J. Yourman, Weiss & Yourman, Los Angeles, CA, Joseph H. Weiss, Moshe Balsam, Weiss & Yourman, New York City, for Morris Wolfson.

Jeffrey C. Block, Michael G. Lange, Chauncey Steele, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, Joseph J. Tabacco, Jr., Christopher T. Heffelfinger, Berman, Devalerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA, for Michael Lee Thompson and David W. Cleveland.

Daniel C. Girard, Anthony K. Lee, Robert A. Jigarjian, Girard & Green, San Francisco, CA, Ralph M. Stone, Shalov, Stone & Bonner, New York City, for Fred Kessler.

Jeffrey C. Block, Michael G. Lange, Chauncey Steele, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, Donald J. Enright, Finkelstein, Thompson & Loughran, Washington, DC, Joseph J. Tabacco, Jr., Christopher T. Heffelfinger, Berman DeValerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA, for Wania Almadotter.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, for Bill D. Reynolds, Howard Deskins, Gilbert Schwartz and Robert Wilson.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Stuart H. Savett, Barbara A. Podell, Savett, Frutkin, Podell & Ryan, Philadelphia, PA, John K. Grant, Randi D. Badman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, for Andrew Albstein.

Steven J. Toll, Andrew N. Friedman, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Daniel C. Girard, Anthony K. Lee, Robert A. Jigarjian, Girard & Green, San Francisco, CA, Lee S. Shalov, Ralph M. Stone, Shalov, Stone & Bonner, New York City, for Robert T. Booth.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, Corey D. Holzer, Holzer & Holzer, for Evan Rapoport.

Steven O. Sidener, Joseph M. Barton, Gold, Bennett, Cera & Sidener, San Francisco, CA, for Donald Chan.

Daniel C. Girard, Anthony K. Lee, Robert A. Jigarjian, Girard & Greene, San Francisco, CA, Karen M. Hanson, Richard A. Lockridge, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, James Bonner, Shalov, Stone & Bonner, New York City, Lee Squitieri, Squitieri & Fearon, New York City, for Nicholas Nguyen.

Samuel K. Rosen, Wechsler, Harwood, Halebian & Feffer, New York City, Lionel Z. Glancy, Michael Goldberg, Lionel Z. Glancy Law Offices, Los Angeles, CA, for David Fikejs, et al.

Jeffrey C. Block, Michael G. Lange, Chauncey Steele, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, Joseph, J. Tabacco, Jr., Christopher T. Heffelfinger, Berman DeValerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA, Dennis J. Johnson, Jacob B. Perkinson, Law Offices of Dennis J. Johnson, South Burlington, VT, for Alex Krasner.

Brian Murray, Rabin & Garland, New York City, Joseph, J. Tabacco, Jr., Christopher T. Heffelfinger, Berman DeValerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA, for David Ginsberg.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, Brian Felgoise, Law Offices of Brian M. Felgoise, Philadelphia, PA, for James M. Bonner.

Jeffrey H. Squire, Ira M. Press, Kirby, McInerney & Squire, New York City, Kenneth A. Elan, Law Office of Kenneth A. Elan, New York City, Jill M. Manning, Klein & Solomon, New York City, for Dominick Totino.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Bruce G. Murphy, Law Offices of Bruce G. Murphy, Vero Beach, FL, David R. Scott, Neil Rothstein, Scott & Scott, Colchester, CT, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, for Chris Jones.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Marc S. Henzel, Law Offices of Marc S. Henzel, Philadelphia, PA, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, for William J. Grant, II.

Stanley Grossman, Marc I. Gross, Patrick V. Dahlstrom, Paul T. Curley, Pomerantz, Haudek, Block, Grossman & Gross, New York City, Joseph J. Tabacco, Jr.,

Christopher T. Heffelfinger, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA, for Duong Chung.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Jeffrey W. Lawrence, Christopher P. Seefer, Ex Kano S. Sams, II, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, Joshua M. Lifschitz, Bull & Lifschitz, New York City, for Shlomo Roshgadol.

Joseph J. Tabacco, Jr., Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, San Francisco, CA, Samuel Sporn, Joel P. Laitman, Christopher Lometti, Schoengold & Sporn, New York City, for Gregory D. Callender.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, William B. Federman, Dreier, Baritz & Federman, Oklahoma City, OK, for William D. Warner.

William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Mark S. Goldman, Kellie A. Allen, Weinstein, Kitchenoff, Scarloto & Goldman, Philadelphia, PA, John K. Grant, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, Bruce G. Murphy, Law Offices of Bruce G. Murphy, Vero Beach, FL, Michael D. Donovan, Donovan, Miller, Philadelphia, PA, for Lester R. Anderson, et al.

Alan R. Plutzik, Farrow, Bramson, Baskin & Plutzik,Walnut Creek, CA, Eduard Korsinsky, Beattie & Osborn, New York City, John W. Allured, Law Offices of John W. Allured, San Francisco, CA, Daniel Osborn, Beatie & Osborn, New York City, Nina F. Locker, Ignacio E. Salceda, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Michael Mitchell, et al.

Jordan L. Lurie, Kevin J. Yourman, Leigh A. Parker, Weiss & Yourman, Los Angeles, CA, Joseph H. Weiss, Moshe Balsam, Weiss & Yourman, New York City, for Thomson–CSF Ventures.

Elizabeth E. Leland, Juli E. Farris, Lynn Lincoln Sarko, Michael D. Braun, Patrice L. Bishop, Keller, Rohrback, Seattle, WA, for D & D Partnership, DDC.

Ben Furth, The Furth Firm, San Francisco, CA, Bryan L. Crawford, Samuel D. Heins, Heins, Mills & Olson, Minneapolis, MN, for Minnesota Bakers Union Pension Fund.

Arthur Stock, Sherrie R. Savett, Berger & Montague, Philadelphia, PA, Joseph M. Barton, Paul F. Bennett, Solomon B. Cera, Gold, Bennett, Cera & Sidener, San Francisco, CA, for Columbus Capital Partners, L.P.

Steven M. Schatz, Nina F. Locker, Ignacio E. Salceda, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Critical Path, Inc.

Kara M. Andersen, Keker & Van Nest, San Francisco, CA, for William Rinehart.

## OPINION AND ORDER

ORRICK, District Judge.

In these thirty-two private plaintiff class actions ("these actions"), certain shareholders of Critical Path, Inc. ("Critical Path") have brought suits charging Critical Path and various of its officers and directors and its outside auditor, PricewaterhouseCoopers, with having disseminated materially misleading information concerning the company's future profitability during a period commencing July 2000 and continuing until February 2001, and with other acts all in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission.

The procedure governing these actions is found in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15

U.S.C. § 78u–4, which mandates a number of steps to be taken by Court and counsel before the actual preparation for trial. Counsel, after filing a complaint, with the sworn certification required by the statute, must then give notice, not later than twenty days after the date on which the complaint is filed, by publication in a widely circulated national business-oriented publication or wire service advising members of the purported class of the pendency of the action, the claims asserted therein, and the purported class period. Not later than sixty days after the date on which such notice has been given, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

The complaints in these actions assert substantially the same claims arising under the Securities Exchange Act of 1934. Three parties [1] have sought to consolidate these actions for all purposes. The Court has so ordered. Copies of the orders of consolidation heretofore filed, are hereto annexed as Exhibits A and B, respectively.

Having made the decision on the motions to consolidate, the Court now considers motions made by purported class members to be appointed lead plaintiff. Preliminarily, it is appropriate to summarize the facts as they are alleged in *Cohn v. Critical Path,* No. C–01–0551 WHO, which is the first-filed action.

Critical Path is in the business of providing end-to-end Internet messaging and collaboration solutions for, among others, internet service providers, web portals, and web hosting companies. (Compl.¶ 2.) It went public in March 1999, and its stock rose 174 percent on the first day of trading. (*Id.* ¶ 15.) Although the NAS-DAQ suffered a sharp decline in mid-April 2000, Critical Path's stock recovered by September 2000. (*Id.*) Critical Path's customers were in financial trouble by September 2000, and the company knew that many of its customers were cutting costs in a way that would negatively impact Critical Path's bottom line. (*Id.* ¶ 16.) Nevertheless, the officers of Critical Path allegedly disseminated materially misleading information, which generally consisted of optimistic predictions by Critical Path executives about the company's future profitability, during a period beginning in July 2000, and continuing until February 2001. (*See, e.g., id.* ¶¶ 20, 23–25, 34, 37, 46.)

Defendants David Hayden and David Thatcher sold thousands of shares of the company's stock. (*See, e.g., id.* ¶¶ 27–28, 32–33.) On October 19, 2001, Critical Path reported record financial results for the quarter ending September 30, 2000. (*Id.* ¶ 34.) Critical Path leadership subsequently continued to predict an increase in revenue for the fourth quarter of 2000, but on January 18, 2001, revealed that revenues had in fact declined. (*Id.* ¶¶ 39, 42.) In response to this disclosure, analysts downgraded their recommendations with respect to the stock, and the stock price sharply declined, trading at a record volume of more than 29 million shares. (*Id.* ¶¶ 43–44.) On February 2, 2001, Critical Path issued a press release stating that it had initiated an investigation into its revenue recognition practices, believed that the results for fourth quarter 2000 may have been materially misstated, and had placed its President, David Thatcher, and Vice-President of worldwide sales, William Rinehart, on administrative leave. (*Id.* ¶¶ 46–47.) Following the issue of this press release, Critical Path's stock price plummeted nearly 60 percent. (*Id.* ¶ 48.)

---

**1.** Motions to consolidate were filed by Arnold Cohn, the Hall Family, and Columbus Capital Partners, L.P.

Based upon these facts and a review of the complaints filed in these actions, it is appropriate for the Court to determine the class period, for the purposes of these motions only.

The Court has three options. It may select only the class period alleged in the first-filed complaint, namely, June 15, 2000, through February 1, 2001, or it may select only the period of time between specific alleged misrepresentations, or it may and does select as inclusive a class period as the complaints on file suggest exists, namely, October 20, 2000, through February 1, 2001.

The Court now turns to a discussion of the main statutory requirements to be considered in connection with appointing a lead plaintiff, namely, the prospective lead plaintiff's financial interest in the recovery sought by the class, and the prospective lead plaintiff's ability to satisfy the requirements of typicality and adequacy set forth in Rule 23 of the Federal Rules of Civil Procedure.

The PSLRA requires each prospective lead plaintiff to submit a certification that he did not purchase the shares in Critical Path to participate in this action, that he is willing to serve as a representative party, and that he will not accept any payment beyond his pro rata share of the recovery. *See* 15 U.S.C. § 78u–4(a)(2). The certification must also set forth all of [his] transactions in Critical Path shares during the class period, and identify any other private securities class action "filed during the three-year period preceding the date on which the certification is signed by [him]" in which he has sought to serve as lead plaintiff. *See id.* The Court finds that each prospective lead plaintiff here has filed a sworn certification that satisfies this requirement of the PSLRA.

The PSLRA sets forth a rebuttable presumption that the "most adequate plain-

tiff," *i.e.,* the one who is to be selected as lead plaintiff, is the one who:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

This presumption

may be rebutted only by proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of inadequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

■ There are two approaches to the determination of who has the "largest financial interest." The first looks to four factors:

(1) The number of shares purchased;
(2) the number of net shares purchased;
(3) the total net funds expended by the plaintiffs during the class period; and
(4) the approximate losses suffered by the plaintiffs.

*In re Milestone Scientific Sec. Litig.,* 183 F.R.D. 404, 413 (D.N.J.1998); *see also In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998).

■ The second equates "largest financial interest" with potential recovery. *See In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1027 (N.D.Cal.1999). This approach assumes that the "fraud premium," which is the amount by which the stock is inflated because of the alleged

misrepresentations, stayed constant throughout the class period. *See id.* Under this approach, the number of net shares purchased during the class period is determinative. *See id.* The Court considers this the most straightforward method for approximation of financial interest in the recovery sought, but considers that it should be supplemented with in/out losses, *i.e.,* losses suffered by selling shares during the class period. Such losses are recoverable, and because the PSLRA defines financial interest in terms of "recovery sought," they should be included. *See In re Cirrus Logic Sec.,* 155 F.R.D. 654, 661–662 (N.D.Cal.1994) (in/out traders can recover damages and can serve as class representatives); *Chill v. Green Tree Fin. Corp.,* 181 F.R.D. 398, 411 (D.Minn.1998) (including in/out losses in "financial interest" for selection of lead plaintiff). The parties, in submitting their motions, have likewise used their potential recovery to quantify their financial interest.

Finally, although the statute limits the frequency with which one may serve as lead plaintiff, it gives the Court discretion to avoid the prohibition by appointing a person as a lead plaintiff who may have served as such in securities class actions more than five times in the last three years if, in the Court's opinion, the appointment is consistent with the purposes of the statute. The statute provides that except "as the Court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3–year period." 15 U.S.C. § 78u–4(a)(3)(B)(vi). As is clear from the text of the statute, the Court has discretion to permit a suitable lead plaintiff to serve as such in more than five securities class actions during a three-year period.

In these cases, six purported class members have made motions to be appointed lead plaintiff. The moving parties are the Florida State Group, the Thomson–CSF Group, the Hall Family, Columbus Capital Partners L.P. ("Columbus Capital"), Sambasiba Avirneni ("Avirneni"), and the Carly Plaintiffs.

The Florida State Group consists of the Florida State Board of Administration ("FSBA") and David Lewis ("Lewis"). The FSBA is "an entity with constitutional and statutory authority under Florida law for the investment and re-investment of the Florida Retirement System Trust Funds for the benefit of the employees of the State of Florida." (FSBA Mot. at 5:19–21.) It has over $100 billion under management. The FSBA avers, through its in-house counsel, Horace Schow II ("Schow"), that it is experienced in securities litigation and is committed to the vigorous prosecution of this action. (Pucillo Aff. in Supp. of FSBA Mot.Ex. A, Schow Aff. ¶ 5.) The FSBA purchased 64,000 shares on the open market, and sold none, during the class period. It alleges losses of $2,352,013.

Lewis moves on behalf of the Lewis Family as part of the Florida State Group. The Lewis Family claims that it lost over $1.9 million as a result of the alleged fraud. Lewis claims this comprised a "very substantial portion" of the family's net worth. He purchased 110,200 shares, and sold 81,800, during the class period, and alleges losses of $1,892,881.

Columbus Capital is an investment fund based in San Francisco. It purchased 410,000 shares (20,000 of which were purchased to cover a short position), and sold 140,000 shares (20,000 of which were sold short), during the class period. It alleges net losses in excess of $1.8 million.

The Thomson–CSF Group is comprised of two institutional investors, Thomson–

CSF Ventures ("Thomson–CSF") and Westgreen Holdings LLC ("Westgreen"), and two individual investors, Alexander Nehring ("Nehring") and William James Bell ("Bell"). It alleges losses in the aggregate amount of at least $14,095,942. Thomson–CSF acquired 233,976 shares in exchange for shares in ISOCOR on January 26, 2000, and sold 83,976 shares during the class period. Thomson–CSF alleges losses of $10,897,206.56. Westgreen acquired 32,500 shares, and sold none, during the class period. Westgreen alleges losses of $362,664.38. Bell acquired 57,500 shares, and sold none, during the class period. Bell alleges losses of $2,176,605. Nehring acquired 53,400 shares, and sold none, during the class period. Nehring alleges losses of $659,466.19.

The Hall Family is comprised of Ashley Jay Hall, and his parents, Lester Hall and Joyce Hall. The three members of the Hall Family acquired 253,407 shares of Critical Path in exchange for shares in PeerLogic on September 25, 2000, and did not sell any shares during the class period. The Hall Family alleges losses of $15,850,000.

The Carly Plaintiffs are comprised of Mr. and Mrs. Dan and Geraldine Carly (the "Carlys"), and Dennis Swing ("Swing").[2] The Carlys acquired 458 shares, and sold 104, during the class period, and allege losses of approximately $12,000. Swing acquired 3,400 shares, and sold none, during the class period. He alleges losses of slightly more than $200,000.

Avirneni acquired 150 shares of Critical Path on January 18, 2001, and sold none during the class period. He alleges losses of $2,400.

Two of these motions may be quickly resolved. Neither Avirneni nor the Carly Plaintiffs have the largest financial interest.

The Carly Plaintiffs allege more substantial losses, and Geraldine Carly alleges losses of nearly all of her net worth. Mrs. Carly contends that the fact that she lost a high percentage of her net worth supports a finding that she has the largest financial interest in the relief sought by the class. The Court rejects this proportional approach to financial interest for two reasons. First, such an approach would undercut the PSLRA's goal of increasing the appointment of institutional investors as lead plaintiffs. This is because a large numerical loss suffered by an institutional investor is likely to be a smaller percentage of the institution's assets under management than a smaller loss suffered by an individual investor would be of that investor's assets. Second, while it may be true that losing a high percentage of one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire is no substitute for the experience and resources of an institutional investor with, presumably, an in-house legal team and experience in the securities business.

Columbus Capital alleges losses that would make it an acceptable lead plaintiff if others with higher losses were found unsuitable under the Rule 23 inquiry conducted at this stage, but is not a suitable lead plaintiff for another reason. In January 2001, Columbus Capital sold short 20,000 shares of Critical Path. Short-selling is an investment strategy the success of which is premised on a drop in stock price. In *In re Bank One Shareholders Class Actions,* 96 F.Supp.2d 780 (N.D.Ill. 2000), the court rejected a hedge fund because of a similar trading pattern. *See id.* at 783. It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. The fraud-on-the-market

---

**2.** Dan Carly has passed away since the time the Carly Plaintiffs filed their motion.

theory, the premise of which is that the market price accurately reflects publicly available information, is central to securities actions. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny. *But cf. Danis v. USN Communications, Inc.,* 189 F.R.D. 391, 396 (N.D.Ill.1999) (rejecting challenge to class representative's typicality based on short sales, because class representative also lost money on long positions; acknowledging that short selling may be inconsistent with fraud-on-the market theory).

This leaves the FSBA Group, the Thomson–CSF Group, and the Hall Family as possible lead plaintiffs.

 Even assuming that the Hall Family has the largest financial interest (there is considerable disagreement between it and the Thomson–CSF Group as to the proper calculation of damages), the Hall Family is not adequate because of the manner in which it acquired its shares, which was the apparently privately negotiated acquisition of PeerLogic. The Hall Family, in an effort to demonstrate its suitability for the position of lead plaintiff, has submitted a declaration stating that it "did not rely on non-public information in making the decision to exchange [its] Peer-Logic shares for Critical Path shares. Rather, [its] investment decision was based upon publicly available information that was known to the entire market." (Supp. Joint Decl. of Ashley Jay Hall, Joyce Hall, and Lester Hall in Supp. of Mot. at ¶ 8.) The Hall Family does not elaborate on the information upon which it relied. It claims it is a typical class member on the theory that a searching inquiry under Rule 23 is not appropriate at this stage in the litigation. It contends that its

declaration is, therefore, sufficient to entitle it to the presumption that it is the "most adequate plaintiff," citing *Gluck v. CellStar Corp.,* 976 F.Supp. 542 (N.D.Tex. 1997), for the proposition that the possibility that a prospective lead plaintiff otherwise entitled to the presumption that it is "most adequate" may be subject to unique defenses later in the litigation does not rebut the presumption.

The Court declines to follow *Gluck,* and considers instead that the concerns raised by a private transaction are appropriately addressed at this stage. *See, e.g., Network Assocs.,* 76 F.Supp.2d at 1030. The fact that a searching inquiry under Rule 23 is not required at this stage of the litigation does not mean that the Court must pay mere lip service to the requirement of the statute that a prospective lead plaintiff "satisf[y] the requirements of Rule 23." *See* 15 U.S.C. § 78u–4(a)(3)(b)(iii)(I)(cc). The doctrine against conducting a searching inquiry under Rule 23 at this stage is best understood as a means of speeding the litigation along, and thus encouraging efficiency, rather than a means of avoiding problems that may affect the class later on in the lawsuit. Refusing to conduct a thorough Rule 23 inquiry for the latter reason is contrary to the interests of the class. The Court, in determining whether a prospective lead plaintiff has made a *prima facie* showing of typicality and adequacy, must be mindful that it is protecting the interests of the class. The Hall Family's conclusory statement that it did not rely on nonpublic information, made without elaboration and buttressed by insistence that the Court conduct only a cursory Rule 23 examination, fails to satisfy the Court. Appointing as lead plaintiff one who acquired its shares in a private transaction invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses. Certainly the Court should not

appoint as lead plaintiff one whose appointment will invite scrutiny of the details of a private transaction.

Thus, although the Hall Family has many desirable characteristics, such as its large financial interest and the fact that it took steps to interview various firms before selecting its counsel, the Court declines to appoint it as lead plaintiff. Exposure to the concerns raised by a private transaction would disserve the class that the Court is charged with protecting.

■ Turning to the Thomson–CSF Group, the Court finds it inadequate because it is a group, the members of which, as its counsel candidly admitted at the hearing, have no previous relationship. The Thomson–CSF Group is comprised of two individuals and two institutional investors. Their only connection to each other is that they are each clients of counsel for the group, Milberg Weiss Bershad Hynes & Lerach. It is plain from the language of the statute that a group may be appointed to serve as lead plaintiff. This must, however, be aligned with the PSLRA's goal of placing control of the litigation with the parties. Courts have devoted considerable energy to determining what kind of group is acceptable. Some have required a preexisting relationship. *See Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146, 1153, 1154 (N.D.Cal.1999) (citing *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 809–13 (N.D.Ohio 1999)). Others have focused on the number of persons in the group. *See, e.g., Chill,* 181 F.R.D. at 408–09 (acknowledging that the larger the group, the more control will be diluted; stating that a "rule of reason" must prevail); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C.1999) (setting "five

or six" as the upper limit of persons in a lead plaintiff group). The Court considers the existence of a preexisting relationship to be paramount in determining whether to accept a group; such a group is more likely to surpass a group of small size, but without any preexisting relationship, in operating efficiency. A group is not a proper group unless its members have a relationship that predates the litigation. Accordingly, despite the Thomson–CSF Group's small size, the Court finds it inadequate because its members lack a preexisting relationship.

The Court now considers whether Thomson–CSF, on its own, could serve as lead plaintiff. In certain circumstances, it may serve the interests of the class for the Court to sever from a group a single plaintiff that could be entitled to lead status and determine if that plaintiff should be appointed the "most adequate plaintiff." Thomson–CSF was not presented as a prospective lead plaintiff on its own, however, and its moving papers do not demonstrate why it would be a suitable lead plaintiff even if its group were to be rejected.[3] The Court finds that it made no *prima facie* showing of adequacy or typicality under the PSLRA.[4]

■ Finally, the Court considers whether the Florida State Group would be suitable as the lead plaintiff. The Court finds that the FSBA, without Lewis, is the "most adequate" plaintiff. The FSBA has made a *prima facie* showing of typicality and adequacy. It appears to have acquired its Critical Path shares on the open market, and it is experienced in the investment business and in the prosecution of securities class actions. The FSBA alleges

---

**3.** It is reasonable to expect that, given the scrutiny given groups by many courts, a prospective lead plaintiff might make such an attempt.

**4.** This is in line with the trend in the briefing and argument, which has concentrated almost exclusively on the financial interest requirement, to the detriment of the requirement that Rule 23 be satisfied.

a loss of $2,352,013. According to the declaration submitted by its general counsel, it is charged by statute with the investment and reinvestment of the Florida Retirement System Trust Funds for the benefit of the employees of the State of Florida, and has over $100 billion in assets under management. (Schow Aff. ¶ 5.) This is sufficient information for the Court to find that the FSBA, for present purposes, satisfies Rule 23.

Additionally, the Court will not bar the FSBA from serving as lead plaintiff, despite the fact that it has served as such in more than five actions within the last three years.

Although the PSLRA, in a section entitled "Restrictions on professional plaintiffs," purports to prohibit a proposed lead plaintiff from serving as such if it has done so in five securities class actions brought as plaintiff class motions pursuant to the Federal Rules of Civil Procedure during any three-year period, Congress did not intend to apply this prohibition to institutional investors in all cases. According to the House of Representatives Conference Report No. 104–396 of the 104th Congress at 35 (1999):

> Institutional investors may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years.

The PSLRA explicitly authorizes the Court to permit a prospective lead plaintiff to exceed the limitation of 15 U.S.C. § 78u–4(a)(3)(B)(vi), by providing at the beginning of the statute, "[e]xcept as the Court may otherwise permit." In this case, the Court does permit the FSBA to act as lead plaintiff, although the Court is cognizant of the fact that the FSBA is currently serving as lead plaintiff in six securities class actions. The main reason for this is that, as noted above, the FSBA is the only acceptable institutional investor, and, indeed, the only acceptable large shareholder. The fact that the FSBA is in that position weighs heavily in favor of its appointment. *See Telxon,* 67 F.Supp.2d at 822 (recognizing the propriety of lifting the bar of § 78u–4(a)(3)(B)(vi) where other candidates are individuals with small losses and groups of unrelated investors); *see also McKesson,* 79 F.Supp.2d at 1156–57 ("It might even make a difference if [the FSBA] were the only institutional investor moving to serve as lead plaintiff.") The facts that the Court has available one institutional investor, and the clear statement in the Conference Report that institutional investors "do not represent the type of professional plaintiff [the PSLRA] seeks to restrict," warrant excusing the FSBA from the bar of § 78u–4(a)(3)(B)(vi).

■ The Court declines to appoint Lewis as co-lead plaintiff, choosing not to dilute the fiduciary responsibility of the lead plaintiff. *See Network Assocs.,* 76 F.Supp.2d at 1030. The interests of individual investors will be adequately protected by the lead plaintiff in its capacity as fiduciary for the class, and, to the extent counsel deems it beneficial to present the testimony of individual investors, such an investor is not barred from testifying at trial merely because he or she is not the lead plaintiff. *See id.*

The Court now turns its attention to the selection of lead counsel. In language as clear as can be "the most adequate plaintiff *shall,* subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(vi) (emphasis added).

The main reason Congress places the primary responsibility for selecting lead counsel in the hands of the most adequate

plaintiff is that Congress has endeavored to ensure that the lead plaintiff will be, as in this case, an institutional investor skilled in the practice of the securities industry, capable of overseeing the conduct of the litigation.

The most adequate plaintiff is charged with the exercise of due diligence of the highest order. He is placed in a fiduciary position responsible for the selection of counsel skilled in and knowledgeable about the intricacies of the practice of securities litigation. Then he must secure court approval in selecting reputable, knowledgeable counsel who will produce the maximum recovery at the least expensive price.

Certain courts have elected to utilize a competitive bidding process to select lead counsel. Competitive bidding is intended to increase class recovery by keeping attorneys' fees low by the operation of a competitive market. Sometimes this works; sometimes the lead plaintiff will not speak to or cooperate with the counsel who is the low bidder and approved by the Court. Suffice it to say, competitive bidding has been considered and rejected by the Court in this case.

Accordingly, on or before July 10, 2001, the FSBA shall file an application for the approval of its choice of lead counsel. The application must be signed by an officer of the FSBA, shall be submitted under seal, and must set forth:

1. The manner in which it selected lead counsel;

2. The fee arrangement between it and its proposed counsel, which shall provide for a cap on fees, but leave it to the Court to determine an actual fee to be awarded;

3. The fee arrangements it has reached with its counsel in other securities litigation in which it is currently serving as lead plaintiff;

4. A statement of the results its lead counsel has achieved in other securities litigation for which it has served as lead counsel;

5. A statement clearly specifying how the out-of-pocket costs of the litigation will be funded, and what the obligations of the lead plaintiff will be should the suit be unsuccessful;

6. A statement as to how counsel plans to staff the case, including the number of lawyers and paralegals to be involved, the breakdown between partners and associates, and an estimate of the number of hours to be expended through various stages of the litigation. If lead counsel plans to parcel out work to other law firms, the application should detail the need for and extent of such delegation;

7. If the lead plaintiff plans to select co-counsel to represent it, the application shall set forth the reasons for appointing two law firms and the plans for allocating work between them.

8. The application shall circumscribe the role of local, or liaison counsel to avoid duplication of services, wasted time and unnecessary expense.

Accordingly,

IT IS HEREBY ORDERED that:

1. The motion to appoint the Florida State Board of Administration ("FSBA") and David M. Lewis ("Lewis") as co-lead plaintiffs and for approval of their choice of lead counsel is granted in part and denied in part. The FSBA is appointed as lead plaintiff. Lewis' motion to be appointed co-lead plaintiff is denied.

2. The FSBA shall submit an application for the approval of its choice of lead counsel, complying with this Memorandum Decision and Order on or before July 10, 2001. The application shall be signed by an authorized officer of the FSBA and submitted under seal.

3. The motions for appointment of lead plaintiff and for the approval of counsel filed by the Thomson–CSF Group, the Hall Family, Columbus Capital, the Carly Plaintiffs, and Sambasiba Avirneni are, and each of them is, denied.

### *EXHIBIT A*

### *NOT FOR CITATION (L.R. 3–4(e))*

## ORDER CONSOLIDATING RELATED SECURITIES CLASS ACTIONS

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, and for good cause shown,

IT IS HEREBY ORDERED that the following related class actions are consolidated for all purposes:

*Cohn v. Critical Path, Inc.,* No. C–01–0551 WHO

*Sternheim v. Critical Path, Inc.,* No. C–01–0552 WHO

*Wolfson v. Critical Path, Inc.,* No. C–01–0553 WHO

*Thompson v. Critical Path, Inc.,* No. C–01–0554 WHO

*Kessler v. Critical Path, Inc.,* No. C–01–0555 WHO

*Reynolds v. Critical Path, Inc.,* No. C–01–0565 WHO

*Albstein v. Critical Path, Inc.,* No. C–01–0572 WHO

*Almadotter v. Critical Path, Inc.,* No. C–01–0579 WHO

*Deskins v. Critical Path, Inc.,* No. C–01–0587 WHO

*Booth v. Critical Path, Inc.,* No. C–01–0593 WHO

*Rapoport v. Critical Path, Inc.,* No. C–01–0594 WHO

*Chan v. Critical Path, Inc.,* No. C–01–0595 WHO

*Nguyen v. Critical Path, Inc.,* No. C–01–0596 WHO

*Fikejs v. Critical Path, Inc.,* No. C–01–0597 WHO

*Cleveland v. Critical Path, Inc.,* No. C–01–600 WHO

*Wilson v. Critical Path, Inc.,* No. C–01–0605 WHO

*Krasner v. Critical Path, Inc.,* No. C–01–0620 WHO

*Ginsberg v. Critical Path, Inc.,* No. C–01–0654 WHO

*Bonner v. Critical Path, Inc.,* No. C–01–657 WHO

*Totino v. Critical Path, Inc.,* No. C–01–0671 WHO

*Jones v. Critical Path, Inc.,* No. C–01–0697 WHO

*Grant v. Critical Path, Inc.,* No. C–01–0729 WHO

*Chung v. Critical Path, Inc.,* No. C–01–0832 WHO

*Roshgadol v. Critical Path, Inc.,* No. C–01–0893 WHO

*Callender v. Critical Path, Inc.,* No. C–01–0934 WHO

*Warner v. Critical Path, Inc.,* No. C–01–0935 WHO

*Anderson v. Critical Path, Inc.,* No. C–01–0936 WHO

*Mitchell v. Critical Path, Inc.,* No. C–01–1007 WHO

*Thomson–CSF Ventures v. Critical Path, Inc.,* No. C–01–1308 WHO

*D & D Partnership, LLC v. Critical Path, Inc.,* No. C–01–1309 WHO

The consolidated actions shall proceed as *In re Critical Path, Inc., Securities Litigation,* No. C–01–0551 WHO. After the Court selects a lead plaintiff, the lead plaintiff shall file an amended consolidated class action complaint, which shall serve as the operative complaint in this consolidated litigation.

*EXHIBIT B*

*NOT FOR CITATION (L.R. 3–4(e))*

## AMENDED ORDER CONSOLIDATING RELATED SECURITIES CLASS ACTIONS

This Amended Order Consolidating Related Securities Class Actions supersedes the May 25, 2001, Order Consolidating Related Securities Class Actions.

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, and for good cause shown,

IT IS HEREBY ORDERED that the following related class actions are consolidated for all purposes:

*Cohn v. Critical Path, Inc.,* No. C–01–0551 WHO

*Sternheim v. Critical Path, Inc.,* No. C–01–0552 WHO

*Wolfson v. Critical Path, Inc.,* No. C–01–0553 WHO

*Thompson v. Critical Path, Inc.,* No. C–01–0554 WHO

*Kessler v. Critical Path, Inc.,* No. C–01–0555 WHO

*Reynolds v. Critical Path, Inc.,* No. C–01–0565 WHO

*Albstein v. Critical Path, Inc.,* No. C–01–0572 WHO

*Almadotter v. Critical Path, Inc.,* No. C–01–0579 WHO

*Deskins v. Critical Path, Inc.,* No. C–01–0587 WHO

*Booth v. Critical Path, Inc.,* No. C–01–0593 WHO

*Rapoport v. Critical Path, Inc.,* No. C–01–0594 WHO

*Chan v. Critical Path, Inc.,* No. C–01–0595 WHO

*Nguyen v. Critical Path, Inc.,* No. C–01–0596 WHO

*Fikejs v. Critical Path, Inc.,* No. C–01–0597 WHO

*Cleveland v. Critical Path, Inc.,* No. C–01–600 WHO

*Wilson v. Critical Path, Inc.,* No. C–01–0605 WHO

*Krasner v. Critical Path, Inc.,* No. C–01–0620 WHO

*Ginsberg v. Critical Path, Inc.,* No. C–01–0654 WHO

*Bonner v. Critical Path, Inc.,* No. C–01–657 WHO

*Totino v. Critical Path, Inc.,* No. C–01–0671 WHO

*Jones v. Critical Path, Inc.,* No. C–01–0697 WHO

*Grant v. Critical Path, Inc.,* No. C–01–0729 WHO

*Chung v. Critical Path, Inc.,* No. C–01–0832 WHO

*Roshgadol v. Critical Path, Inc.,* No. C–01–0893 WHO

*Callender v. Critical Path, Inc.,* No. C–01–0934 WHO

*Warner v. Critical Path, Inc.,* No. C–01–0935 WHO

*Anderson v. Critical Path, Inc.,* No. C–01–0936 WHO

*Mitchell v. Critical Path, Inc.,* No. C–01–1007 WHO

*Thomson–CSF Ventures v. Critical Path, Inc.,* No. C–01–1308 WHO

*D & D Partnership, LLC v. Critical Path, Inc.,* No. C–01–1309 WHO

*Columbus Capital Partners, L.P. v. Critical Path, Inc.,* No. C–01–2405 WHO (previously C–01–20359 PVT)

*Minnesota Bakers Union Pension Fund, et al. v. Critical Path, Inc.,* No. C–01–1313 WHO

The consolidated actions shall proceed as *In re Critical Path, Inc. Securities Litigation,* No. C–01–0551 WHO. Documents filed in this consolidated litigation shall indicate whether they relate to all actions or a specific action. A document relating to a specific action shall so indicate by

reference to the name and number of that action.

After the Court selects a lead plaintiff, and approves the lead plaintiff's selection of lead counsel, the lead plaintiff shall file an amended consolidated class action complaint, which shall serve as the operative complaint in this consolidated litigation.