In re: **DEUTSCHE TELEKOM AG SECURITIES LITIGATION.**

**No. 00 Civ. 9475(SHS).**

United States District Court, S.D. New York.

Oct. 29, 2002.

## OPINION & ORDER

STEIN, District Judge.

Allan Kramer and Bruce Holberg have brought this consolidated securities class action individually and on behalf of all others who purchased ordinary shares of Deutsche Telekom stock in the form of American Depository Shares ("ADSs") pursuant to a registration statement filed with the Securities and Exchange Commission ("SEC") on May 22, 2000 and a prospectus dated June 17, 2000. Defendants currently include, in addition to Deutsche Telekom itself, various underwriters of the stock offering as well as Ron Sommer, at that time the chairman and CEO of Deutsche Telekom.

The Consolidated Amended Class Action Complaint alleges that defendants violated

Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder when they made false and misleading statements about Deutsche Telekom and its financial condition. In an order dated April 9, 2001, this Court appointed plaintiffs Kramer and Holberg lead plaintiffs and approved their selection of counsel.

Plaintiffs have now moved for class certification pursuant to Fed.R.Civ.P. 23 and defendants oppose that certification unless four distinct subclasses are formed. Because the prerequisites of Fed.R.Civ.P. 23(a) have been met and the action is maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(3), plaintiffs' motion is granted. In addition, the Court, in its discretion, declines to certify subclasses at this time.

## I. BACKGROUND

The background of this case is set forth in full in this Court's Opinion and Order dated February 20, 2002, *In re Deutsche Telekom AG Sec. Litig.*, 00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002), and familiarity with that decision is assumed. Only the facts central to this motion are set forth here.

As part of a global offering of 200 million ordinary shares of Deutsche Telekom stock, Deutsche Telekom filed a registration statement with the Securities and Exchange Commission on May 22, 2000 to sell 45 million ordinary shares of its stock in the form of American Depository Shares (ADSs). (Compl.¶ 26.) The registration statement contained a prospectus, the final version of which is dated June 17, 2000. (Compl.¶¶ 1–2, 26.) Plaintiffs allege that the prospectus and registration statement are materially false and misleading on the

grounds that the documents (1) failed to disclose that Deutsche Telekom was engaged in advanced acquisition talks with VoiceStream Wireless Corp. at the time the documents were prepared, and (2) overstated Deutsche Telekom's real estate portfolio by at least 2 billion Euros (approximately $1.8 billion). (Compl.¶¶ 2, 27–29, 34–42.)

In July 2000, as news of Deutsche Telekom's planned purchase of VoiceStream began to emerge, the value of Deutsche Telekom stock declined. (Compl.¶¶ 30–31.) On or about July 24, 2000, Deutsche Telekom publicly announced its planned takeover of VoiceStream. The price of Deutsche Telekom declined further—to approximately $45 per share—on the heels of this announcement. (Compl.¶ 32.) Pursuant to an agreement, Deutsche Telekom would pay $200 per share of VoiceStream to purchase VoiceStream and would issue additional shares of Deutsche Telekom to fund that purchase. (Compl.¶¶ 29, 33(e).) This $200 per share figure was offered by Deutsche Telekom to VoiceStream on June 15, 2000. (Compl.¶ 33(e).) In response to the offer, VoiceStream agreed to begin providing Deutsche Telekom with due diligence information as of June 15, 2000. (*Id.*)

Deutsche Telekom stock declined again in February 2001, after the company disclosed that it was taking a special writedown for land values in its real estate portfolio by 2 billion Euros (approximately $1.8 billion) from a total book value of 17.2 billion Euros. (Compl.¶ 42.) Plaintiffs allege that the over-valuation of Deutsche Telekom's real estate portfolio had come to light within the company as early as 1995. (Compl.¶ 44.)

The consolidated amended class action complaint alleges violations of: Section 11 of the Securities Act, 15 U.S.C. § 77k, by all defendants (count I); Section 12(a)(2) of

the Securities Act, 15 U.S.C. § 771(a)(2), by all defendants except Sommer (count II); Section 15 of the Securities Act, 15 U.S.C. § 77o, by Sommer (count III); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, by Deutsche Telekom and Sommer (count IV); and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t, by Sommer (count V).

## II. DISCUSSION

Allan Kramer and Bruce Holberg seek to be appointed class representatives and seek certification of the following class:

> [A]ll persons who purchased ordinary shares of stock in the form of American Depository Shares ('ADS') of Deutsche Telekom AG ('Deutsche Telekom' or the 'Company') during the period from June 19, 2000 to and including February 21, 2001 (the 'Class Period'). Excluded from the Class are the defendants and the underwriters of the offering and all officers, affiliates and immediate family members of such entities, including their heirs, legal representatives, successors, predecessors in interest and assigns. (Plaintiffs' Memorandum of Law dated April 22, 2002.)

To succeed on this class certification motion, plaintiffs must establish that they meet the four prerequisites of a class action set forth in Fed.R.Civ.P. 23(a) and that the class action is maintainable pursuant to Fed.R.Civ.P. 23(b).

### A. Rule 23(a): Prerequisites to a Class Action

Plaintiffs bear the burden of establishing that they meet the four prerequisites for a class action set forth in Fed.R.Civ.P. 23(a), which provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In evaluating plaintiffs' motion, a district court must accept as true the substantive allegations in the complaint and does not conduct even a preliminary inquiry into the merits of the case. *See Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999). The court does, however, rigorously analyze the conditions of Rule 23(a). *Id.*

The four prerequisites are known colloquially as numerosity, commonality, typicality, and adequacy, and each will be examined in turn.

#### 1. *Numerosity*

To establish that a class is "so numerous that joinder of all members is impracticable," a plaintiff need not show that joinder is impossible. Fed R. Civ. P. 23(a); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Nor need the plaintiff know the exact number of class members. *Robidoux*, 987 F.2d at 935. Instead, numerosity depends upon "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Certification is appropriate where the number of class members is sufficiently large such that joinder of all members would make litigation needlessly complicated and inefficient.

■ Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market. *See In re*

*Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 123 (S.D.N.Y.1997). In this case, more than 200 million ordinary shares of Deutsche Telekom stock were allegedly offered pursuant to the registration statement and the prospectus. (Compl.¶ 18(a).) Tens of millions of those shares were issued in the form of ADSs in the United States. (Compl.¶ 18(a).) Although plaintiffs do not know the precise number of shareholders who bought stock during the class period, they estimate the number to be in the thousands. (Compl.¶ 18(b).) The proposed class thus satisfies the prerequisite of numerosity.

## 2. Commonality

The second prerequisite is commonality, which is established if the plaintiffs' and class members' grievances share common questions of law or fact. *See* Fed.R.Civ.P. 23(a); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997); *Saddle Rock Partners, Ltd. v. Hiatt*, No. 96 Civ. 9474, 2000 WL 1182793, at *3 (S.D.N.Y. Aug. 21, 2000); *In re Painewebber Ltd.*, 171 F.R.D. at 123. "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992).

■ Plaintiffs allege fraud involving material misrepresentations and omissions regarding Deutsche Telekom's stock in written publications circulated to the investing public, including the registration statement, the prospectus, press releases, and statements provided to the investment community and the media. Plaintiffs allege that all class members were injured when they purchased ADSs at prices that were artificially inflated as a result of defendants' material misrepresentations and omissions.

The commonality requirement is met here because the plaintiffs' claims arise from the same alleged course of conduct and are based on legal theories similar to those of all the class members. Common questions of law and fact include: (1) whether the defendants violated the Securities Act and the Exchange Act; (2) whether the June 2000 registration statement and prospectus misrepresented or omitted material facts about Deutsche Telekom and its financial condition; and (3) whether the class members have been damaged as a result of defendants' conduct.

## 3. Typicality

Typicality is established when the plaintiff shows that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (*quoting In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)).

■ The claims of Allan Kramer and Bruce Holberg are typical of the class they seek to represent. Plaintiffs, like other members of the proposed class, allege that they purchased Deutsche Telekom ADSs during the class period and that they were injured as a result of false and misleading statements made by Deutsche Telekom in documents filed with the SEC and disseminated to the investing public. "[T]he typicality requirement is not defeated by minor variations in the fact patterns of individual class member's claims." *Abdul–Malik v. Coombe*, No. 96 Civ. 1021, 1996 WL 706914 (S.D.N.Y. Dec. 6, 1996). In general, the claims of Allan Kramer and Bruce Holberg are typical of the class members' claims. Therefore, the typicality prerequisite is satisfied.

## A. Adequacy

The last prerequisite to a class action is the determination that the representative parties "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). To meet the adequacy requirement: (1) class counsel must be "qualified, experienced, and generally able to conduct the litigation;" and (2) class members must not have interests that are antagonistic to one another. *In re Drexel Burnham Lambert Group*, 960 F.2d at 291.

■ Messrs. Kramer and Holberg appear to be determined and able to prosecute this action. On the record before the Court, there is no conflict between the named plaintiffs and the members of the proposed class. The plaintiffs, as with class member, were purchasers of Deutsche Telekom ADSs who were allegedly injured by false and misleading statements about the company's financial situation.

Finally, plaintiffs' counsel—the firms of Bernstein, Liebhard, & Lifshitz, LLP and Milberg, Weiss, Bershad, Hynes & Lerach LLP—have sufficient experience with this type of litigation to represent the interests of the class adequately and fairly.

## B. Rule 23(b): Class Action Maintainable

Having met the prerequisites to a class action pursuant to Fed.R.Civ.P. 23(a), plaintiffs must also show that they meet one of the subdivisions of Fed.R.Civ.P. 23(b) in order to maintain the class action. Plaintiffs assert that they satisfy Rule 23(b)(3), which requires that:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws. *See, e.g., In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y.1999). As set forth above, the securities fraud claims involve many questions of law and fact common to Kramer, Holberg and the class—particularly the question whether the allegedly fraudulent statements and omissions concerning Deutsche Telekom violated the securities laws. These questions predominate over any individual questions. Thus, the requirement of the predominance of common questions has been met.

This Court also finds that a class action is superior to other available methods of litigation. Class actions are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually. Given the large number of potential plaintiffs and the commonality of their claims, certifying the class will permit a fairer and more efficient adjudication of the controversy than requiring individual adjudications would.

## C. Certification of Subclasses is not Warranted at This Time

■ As noted above, defendants seek the creation of subclasses if the Court certifies a class at this time. Specifically, they seek the certification of four subclasses on the grounds that factual and legal differences among the class members exist and that the litigation will be more effi-

ciently managed if subclasses are recognized at the outset.

District courts have broad discretion to facilitate the "orderly administration" of an action, which includes the ability to create subclasses pursuant to Rule 23(c)(4)(B), "[w]hen appropriate." Fed.R.Civ.P. 23(c)(4); *Marisol A.*, 126 F.3d at 379. The Court is not obligated to create subclasses at the class certification stage of the litigation, but retains the "flexibility to certify subclasses as the case progresses and as the nature of the proof to be developed at trial becomes clear." *Marisol A.*, 126 F.3d at 379. Pursuant to Rule 23(c)(1), class certification "may be altered or amended" at any time "before the decision on the merits." Fed.R.Civ.P. 23(c)(1).

Defendants characterize this action as two completely separate lawsuits relating to two entirely unrelated events—the first relating to the July 24, 2000 announcement that Deutsche Telekom would acquire VoiceStream and the second relating to the February 21, 2001 announcement that Deutsche Telekom would write down the value of its real estate holdings. Defendants argue that this renders plaintiffs' various claims legally and factually distinct from one another.

Specifically, defendants assert that the VoiceStream claims are brought pursuant to the Securities Act while the real estate claims are brought pursuant to the Securities Act and the Exchange Act; that the VoiceStream claims are brought on behalf of purchasers of Deutsche Telekom's ADSs pursuant to the prospectus while the real estate claims are brought both on behalf of those purchasers under the Securities Act and on behalf of all ADSs purchasers in the secondary market between July 19, 2000 and February 21, 2001; that the VoiceStream claims are brought against all defendants while the real estate claims are brought against all defendants under the Securities Act and against Deutsche Telekom and Ron Sommer only under the Exchange Act. (*Id.*)

However, the fact that the alleged misconduct relates to two different disclosures does not transform this action into two completely separate lawsuits, as defendants maintain. The consolidated amended class action complaint alleges, in numerous places, that defendants defrauded investors pursuant to a course of conduct based on false and misleading statements and omissions of material fact. (Compl.¶¶ 2, 27). Plaintiffs' claims arise out of a common core of facts and legal issues, deal with overlapping or intertwined defendants, and attack various aspects of a uniform course of conduct involving the dissemination of allegedly false and misleading information about Deutsche Telekom.

Furthermore, the variation in legal standards between plaintiffs' Securities Act and Exchange Act claims does not mandate the creation of subclasses, as defendants argue. Courts have routinely certified a single class asserting both Securities Act and Exchange Act claims. *See, e.g., In re College Bound Consol. Litig.*, No. 93 Civ. 2348, 1994 WL 236163 (S.D.N.Y. May 31, 1994); *In re AnnTaylor Stores Sec. Litig.*, No. 91 Civ. 7145, 1992 WL 249975, at *2 (S.D.N.Y. Sept. 22, 1992); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 53–54 (S.D.N.Y.1993). Additionally, the Securities Act and Exchange Act claims implicate similar questions of fact. Plaintiffs' Section 11 and Section 12 Securities Act claims are based on alleged material misstatements and omissions regarding both the VoiceStream merger and Deutsche Telekom's real estate portfolio. Similarly, plaintiffs' Section 10(b) and Section 20(a) Exchange Act claims challenge Deutsche Telekom's real estate disclosures throughout the class period and, for one

month following the offering, defendants' alleged material misstatements and omissions regarding the VoiceStream merger.

Defendants also claim that subclasses should be created since defendants did not cause some of the proposed class members' alleged injuries. Specifically, defendants argue that anyone who bought Deutsche Telekom ADSs after the VoiceStream announcement on July 24, 2000 but sold those shares before the real estate announcement on February 21, 2001, has no claim at all. The United States Court of Appeals for the Second Circuit has recognized that Section 11(e) of the Securities Act "bars recovery of damages if a defendant proves that the loss in the value of a security is due to something other than the alleged misrepresentation...." *Goldkrantz v. Griffin*, 97 Civ. 9075(DLC), 1999 WL 191540, at *3 (S.D.N.Y. Apr. 6, 1999). The law is clear that this argument is "an affirmative defense for defendants who carry their burden of 'disproving causation'...." *Id.* (*quoting Akerman v. Oryx Comm., Inc.*, 810 F.2d 336, 341 (2d Cir. 1987)). However, the class certification stage of the litigation is an inappropriate time to inquire into the merits of plaintiffs' claims and, by extension, defendants' affirmative defenses. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir.2001) (class certification does not present an occasion to "determine whether plaintiffs stated a cause of action or whether they would prevail on the merits" of the case); *In re Ivan F. Boesky Sec. Litig.*, 120 F.R.D. 626, 628 (S.D.N.Y.1988) (refusing to exclude class members who allegedly bought and sold at inflated prices because "[w]hether a disputed claim by members of a part of a proposed class entitles relief is not a question to be summarily decided in defining the scope or time limits of the Class."). Because the Court finds no significant advantage to creating subclasses at this time,

the Court will not tread on the merits of the case and create subclasses on the ground that defendants will contend that certain individuals did not suffer an actual injury.

Finally, defendants urge that the creation of subclasses will simplify the management of this action. To date, the litigation has proceeded without notable difficulty and the Court sees no reason to create subclasses at this time for case management purposes.

## III. CONCLUSION

Because plaintiffs have satisfied the prerequisites of Rule 23(a) and have established that the class action is maintainable pursuant to Rule 23(b), plaintiffs' motion for class certification pursuant to Fed. R.Civ.P. 23 is granted and lead plaintiffs Allan Kramer and Bruce Holberg are appointed class representatives.