**In re CABLE & WIRELESS, PLC, SECURITIES LITIGATION.**

No. CIV.A.02–1860.

United States District Court, E.D. Virginia, Alexandria Division.

April 21, 2003.

John Christopher Pasierb, Cohen, Gettings & Caulkins PC, Arlington, VA, Steven Jeffrey Toll, Cohen, Milstein, Hausfeld & Toll PLLC, Washington, DC, for plaintiffs.

Robert H. Cox, Nathan William Robert Flath, Howrey, Simon, Arnold & White LLP, Washington, DC, for defendants.

Craig Crandall Reilly, Kathleen Joanna Lynch Holmes, Richards, McGettigan, Reilly & West PC, Alexandria, VA, Charles William McIntyre, Jr., Candice Stacey Shepherd, McGuireWoods LLP, McLean, VA, for movants.

## ORDER

LEE, District Judge.

THIS MATTER is before the Court on the movants' motions to be selected as lead plaintiff in accordance with the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and the opportunity to select the counsel of its choosing. This securities class action relates to a series of allegedly false and misleading statements made by C & W and some of its senior officers ("the Individual Defendants"), during the Class Period, August 6, 1999 to December 6, 2002, regarding the company's August 6, 1999 sale of One 2 One (a mobile telecommunications subsidiary) to Deutsche Telecom. The issue before the Court is twofold: (1) whether any of the three movants[1], the Ontario Teachers' Pension Plan ("OTPP"); the American Public Pension Funds ("APPF"), consisting of the Illinois State Universities Retirement System and the West Virginia Investment Management Board; or Alex Osinski is the most adequate plaintiff to serve as the lead plain-

---

[1]. There were originally four parties seeking to be appointed lead plaintiff in this case, but on March 19, 2003, Lincluden Management, Ltd. withdrew its motion. Its motion is therefore moot, and the Court will only consider the motions of the remaining three parties.

tiff under the PSLRA; and (2) whether the lead plaintiff's choice of counsel should be approved by the Court. For the reasons that follow, the Court holds that Alex Osinski and OTPP are the most adequate plaintiffs under the PSLRA, and they shall be appointed lead co-plaintiffs in this case. The Court further holds that each party's selection of counsel is approved.

## I. BACKGROUND

Defendant Cable & Wireless, PLC ("C & W") is a British telecommunications company providing telephone, internet, cable television, multimedia, and data-transmission services. This is a securities fraud class action brought against C & W and the Individual Defendants for violations of Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, § 20(a) of the Exchange Act, and 15 U.S.C. § 78t(a).

The actions against the Defendants allege inflation of the value of C & W securities resulting from false statements made by the defendants regarding the company's finances and defendants' failure to disclose that C & W would have to set aside £1.5 billion in cash if the long-term rating of the company fell below a certain threshold. The parties also allege that C & W had billions of dollars of undisclosed lease commitments and losses on unrecorded assets. The lawsuits were filed on behalf of a putative class composed of purchasers of C & W's common stock, traded on the London Stock Exchange ("LSE"), and purchasers of C & W's American Depositary Receipts ("ADRs"), traded on the New York Stock Exchange ("NYSE"), during the Class Period.

On December 6, 2002, C & W received a downgrade of its long-term rating by Moody's Investment Service, and consequently, C & W was obligated to place in escrow the previously undisclosed £1.5 bil-

lion. As a result of this disclosure, the price of C & W common stock, as traded on the LSE, fell from £0.84 to £0.48 on December 9, 2002. The price of the company's ADRs's, which are the equivalent of the ordinary shares in London, but are traded on the NYSE, also fell from $3.90 to $2.33 on December 9, 2002. Thereafter, on December 26, 2002, the first of ten complaints was filed in this action.[2]

## II. STANDARD OF REVIEW— APPOINTMENT OF LEAD PLAINTIFF

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for selecting a lead plaintiff to oversee class actions brought under the federal securities laws.[3] Specifically, § 21D(a)(3)(A)(i) provides that, within 20 days after a securities class action is filed:

[T]he plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–

(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u–4(a)(3)(A)(i). Thus, class members who have filed a complaint or made a motion pursuant to § 21D(a)(3)(B) of the Exchange Act are eligible to be appointed lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B). In this case, the appropriate notice was published, and each of the movants seeking selection as lead plaintiff has either filed a complaint or made a motion in response to the notice made under subpara-

---

**2.** The Court, *sua sponte,* issued an Order on March 11, 2003, consolidating all individual complaints filed against the Defendants.

**3.** The PSLRA amended both the Securities Act of 1933 and the Exchange Act by adding new §§ 27

(15 U.S.C. § 77z–1) and 21D (15 U.S.C. § 78u–4), respectively. The amendments are virtually identical. Thus, for the sake of convenience, the Court will cite only to the Exchange Act amendments.

graph (A)(i). Accordingly, each movant is eligible to be appointed lead plaintiff.

Section 21D(a)(3)(B)(i) states that the Court should consider any motions brought by plaintiffs or purported class members to appoint lead plaintiff within 90 days after publication of the public notice. 15 U.S.C. § 78u–4(a)(3)(B)(i).

 The PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (hereinafter in this Order referred to as "the most adequate plaintiff"). 15 U.S.C. § 78u–4(a)(3)(B)(i). The Act creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff which: (1) has brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest"[4] in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.[5] 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc).

The above presumption may only be rebutted by proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. Id. § 78u–4(a)(3)(B)(iii)(II)(aa)–(bb).

The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. Id. § 78u–4(a)(3)(B)(v).

The Court will individually address each of the three movants' request to be appointed lead counsel.

## III. ANALYSIS

### A. Alex Osinski

 Alex Osinski ("Osinski") has not filed a complaint in this action, but has moved the Court, "pursuant to Section 21D(a)(3)(B) of the … Exchange Act … for an Order (i) appointing Mr. Osinski to serve as lead Plaintiff in this action, and (ii) approving his selection of Schatz & Nobel, P.C. as Lead Counsel and Cohen, Gettings & Caulkins, P.C. as Liaison Counsel." (Mem. Supp. Mot. Appointment as Lead Pl. and Approval of Lead Pl.'s Choice of Counsel at 1). Therefore, Osinski is eligible to be appointed as lead plaintiff.

Proposed lead plaintiff Osinski alleges to have lost over $112,000 from purchases of C & W's ADRs. Osinski, a United States citizen, purchased 10,000 ADRs of C & W "for his personal accounts during the Class Period." (Id.) Because Osinski is a United States citizen who purchased ADRs from C & W, as lead plaintiff, he would represent the interests of any class member who is United

---

4. The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). However, several district courts have equated "largest financial interest" with the amount of plaintiff's potential recovery. *See In re Critical Path, Inc. Sec. Litig.,* 156 F.Supp.2d 1102, 1107–08 (N.D.Cal.2001); *In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999). "Under this approach, the Court considers the 'number of net shares purchased during the class period' coupled with the losses suffered by selling shares during the class period." *Weisz v. Calpine Corp., et al.,* No. C 02–1200 SBA at *8 (N.D.Cal. Aug. 19, 2002) (quoting *Critical Path,* 156 F.Supp.2d at 1108). *Cf. In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 296 (E.D.N.Y.1998) (employing a four-factor test in determining which plaintiff has suffered the "largest financial interest"). Applying the *Critical Path* method to the instant motion, the Court will assess each of the three movants' requests to be appointed lead plaintiff.

5. Fed.R.Civ.P. 23 requires, *inter alia,* that "the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class."

A claim is typical "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.* 960 F.2d 285, 291 (2d Cir.1992); *In re MicroStrategy Inc. Sec. Litig.,* 110 F.Supp.2d 427, 435 (E.D.Va. 2000).

"[A] person may be an adequate representative of the class where that person (i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *In re MicroStrategy,* 110 F.Supp.2d at 435–36.

States citizen that likewise purchased C & W ADRs. The Court holds that Osinski's claims are typical of those belonging to all class members, because Osinski, like all class members, "purchased securities of Cable and Wireless at prices that were artificially inflated by Defendants' false and misleading representations" (*Id.* at 6.) Therefore Osinski's allegations that the purchase of C & W's securities, at an artificially inflated price, resulted in significant financial loss is a similar claim and legal argument of the class. Therefore Osinski's claims stem "from the same event, practice or course of conduct that forms the basis of the class claims and is based on the same legal or remedial theory." *Weisz,* No. C 02–1200 SBA at *13 (quoting *Jordan v. County of Los Angeles,* 669 F.2d 1311 (9th Cir.1982)). Accordingly, the Court holds that Osinski's claims are typical the class.

Rule 23(a) also requires that a person representing the class be able "fairly and adequately to protect the interests" of all class members. *See.* Fed.R.Civ.P. 23(a)(4). Rule 23 is satisfied when a class representative (i) does not have interests adverse to those of the class; (ii) has retained competent counsel; and (iii) is otherwise competent to serve as class representative. *See In re MicroStrategy,* 110 F.Supp.2d at 435–36; *Switzenbaum, et al., v. Orbital Sciences,* 187 F.R.D. 246, 250 (E.D.Va.1999).

The Court holds that Osinski will fairly and adequately protect the class' interests, because (1) Osinski's interests are aligned with, and not adverse to, those of the class; (2) Osinski has obtained qualified and experienced counsel, and (3) Osinski has submitted a "Certification of Named Plaintiff ... indicating that he is willing to assume the responsibilities of a class representative." (Br. Supp. Mot. for Appointment as Lead Pl. at 7.) For the foregoing reasons, the Court is satisfied that Osinski will fairly and adequately represent the best interests of the class, and holds that Osinski is an adequate lead plaintiff.

■ However, standing alone, Osinski is not particularly an ideal lead plaintiff, because he does not represent any purchaser of C & W common stock on the LSE. Moreover,

the purpose of the PSLRA's selection-of-lead-plaintiff provision was to get institutional investors involved in the prosecution of securities class action suits. *See, e.g., Smith v. Suprema Specialties, Inc.,* 206 F.Supp.2d 627, 640 (D.N.J.2002); *In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 309 (S.D.N.Y. 2001). Accordingly, the Court exercises its discretion to appoint an institutional co-lead plaintiff. "The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action." *Weisz,* No. C 02–1200 SBA at *13. *See In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y.1998) (appointing individual investor and institutional investor as co-lead plaintiffs).

**B. Ontario Teachers Pension Plan ("OTPP")**

■ Like Osinski, OTPP has moved the Court, pursuant to Section 21D(a)(3)(B) of the Exchange Act for an Order appointing it as lead plaintiff and approving its selection of counsel. OTPP is the presumptive lead plaintiff, because it arguably has the "largest financial interest" in the class. OTPP alleges to have lost "$16.54 million from its investment in Cable and Wireless Plc [*sic*]." (Mem. Supp. Mot. to Be Appointed Lead Pl. at 1.) This figure far exceeds the amounts proffered by any of the other proposed lead plaintiffs. "The PSLRA provides that the financial interest in the outcome of the litigation is representative of the ability of a party or parties to function as lead plaintiff." *Weisz,* No. C 02–1200 SBA at *7. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Having considered the "'number of net shares purchased during the class period' coupled with the losses suffered by selling shares during the class period," *Weisz,* No. C 02–1200 SBA at *8 (quoting *Critical Path,* 156 F.Supp.2d at 1108), the Court holds that OTPP has the largest financial interest in the class.

However, as previously stated, the presumptive plaintiff can be rebutted and disqualified upon proof that the party is subject to unique defenses or is otherwise infirm. Therefore, the Court must ensure that OTPP

also meets the requirements of Rule 23, which states that "the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23.

OTPP is a foreign institutional investor that purchased C & W securities on the LSE, a foreign market, now seeks to recover its losses from the foreign defendant. As such, OTPP is subject to several unique defenses, particularly lack of subject matter jurisdiction and *forum non conveniens*. These unique defenses potentially distract OTPP from the focus of representing the class. APPF aptly points out that a movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class. It is undisputed that a movant cannot be selected as lead plaintiff if the unique defenses that it faces will distract that plaintiff from adequately prosecuting the litigation on behalf of the class. *See* § 78u–4(A)(3)(B)(iii)(II)(aa)–(bb).

Courts have refused to approve as lead plaintiff investors, like OTPP, with the largest loss that are subject to unique defenses or are otherwise infirm. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D.Tex. 2002). In particular, courts have refused to select a foreign movant to be the sole lead plaintiff because the defendants were subject to the unique defenses of lacking subject matter jurisdiction and *forum non conveniens. See Tri–Star Farms Ltd. v. Marconi, PLC*, 225 F.Supp.2d 567, 573 n. 7 (W.D.Pa. 2002); *In re Baan Co. Sec. Litig.*, 103 F.Supp.2d 1, 10–11, 25 (D.D.C.2000) (both holding that foreign buyers of shares in a foreign company or on a foreign exchange could not assert claims under United States securities laws). Furthermore, it is commonly agreed that "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff … then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974).

However, the jurisdictional analysis relevant to the unique defenses particular to OTPP also focuses on whether any of the conduct of the defendants occurred in the United States. In this case, OTPP can defend the lack of subject matter jurisdiction argument by providing evidence that much of C & W's fraudulent scheme occurred in the United States. *See Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452 (S.D.N.Y.2001); *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir. 1991) (holding that where foreign defendants have taken significant steps to further a fraudulent scheme in the United States, courts have jurisdiction over claims arising out of that conduct, even if the ultimate result occurs outside of the United States and involves only foreign investors). In this case, APPF alleges in its complaint that significant fraudulent activity by Defendant's occurred in the United States. *See* (Compl. of APPF ¶¶ 4, 50, 77, 82–85, 91–93, 94–96). Moreover, OTPP alleges that the activity on behalf of OTPP was conducted significantly by investment managers based in the United States. Therefore, a strong argument can be made that this Court does have subject matter jurisdiction over OTPP's claims. *But see Marconi*, 225 F.Supp.2d 567 (holding that the court lacked subject matter jurisdiction over claims of foreign purchasers of foreign shares because the fraudulent activity occurred exclusively in a foreign country).

Nevertheless, the cases of *Marconi* and *Baan* both survived because there were also United States investors as lead plaintiff, whose claims were not dismissed on jurisdictional grounds. Therefore, the Court exercises its discretion to appoint OTPP as co-lead plaintiff, along with Osinski, whose claims are not subject to jurisdictional defenses, because the Court holds that OTPP is an adequate co-lead plaintiff. Moreover, OTPP is qualified to serve as lead plaintiff because it "provided the Court with a declaration signed by its Vice–President, General Counsel and Secretary, Roger Barton, which describes OTPP's background and qualifications" as a sophisticated institutional investor that is represented by experienced counsel. (Mem. Supp. Mot. to Be Appointed Lead Plaintiff at 2.)

Undoubtedly, there are United States citizens and/or corporations that, like OTPP, purchased C & W's common stock on the LSE. Moreover, OTPP claims, like fellow class members assert, that the Defendant's false and misleading statements regarding its financial status caused the Plaintiff to suffer significant financial loss. Accordingly, OTPP's claims are typical of the class. Additionally, OTPP is a sophisticated institutional investor with experienced counsel that, is capable of adequately and fairly representing that segment of the class. OTPP is directed to name a The Court holds that appointing Osinski and OTPP as lead co-plaintiffs, individual and institutional investors, members of the class who purchased the Defendant's ADRs and common stock will be adequately and fairly represented.

## C. American Public Pension Funds ("APPF")

■ APPF is comprised of the Illinois State Universities Retirement System and the West Virginia Investment Management Board. APPF filed a complaint against the Defendants, alleging violations of United States' securities laws, which caused APPF to allegedly suffer damages in the amount of $4.6 million. APPF purchased both C & W common stock and ADRs. APPF also alleges a claim of insider trading against the Defendants, and it is the only movant who brings this claim.[6]

APPF properly published a notice advising class members of the pending action, has a large financial interest in the litigation, is an institutional investor with experienced counsel to litigate the case, and has claims typical of the class. Therefore, it would appear at first blush that APPF is the ideal lead plaintiff. However, upon closer examination, the Court is not convinced that APPF is the most adequate plaintiff.

First, APPF was a net seller of C & W shares during the class period—it sold more shares than it purchased. Courts have rejected such movant's applications to be appointed lead plaintiff. *See In re Comdisco Sec. Litig.*, 150 F.Supp.2d 943, 945 (N.D.Ill. 2001); *Weisz*, No. C 02–1200 SBA at *12 (quoting *Comdisco*) (net seller is "totally out of the running for designation as lead plaintiff"). The fact that APPF sold more shares than it purchased during the class period "undermines [APPF's] contention that it has the largest financial interest in this case...." *Weisz*, No. C 02–1200 SBA at *12. In accordance with case law, this Court also rejects the application of APPF, a net seller of Defendant's shares, to be appointed lead plaintiff.

Second, Illinois received more in proceeds from selling its C & W shares than it paid to purchase the shares during the class period. Courts have refused to appoint as lead plaintiff a movant who profited from purchases and sales of the defendant's shares during the class period. *See In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993, 997 (N.D.Cal.1999) (rejecting motion to be appointed lead plaintiff by a movant who made gains during the class period). Accordingly, this Court also rejects APPF's motion to be appointed lead Plaintiff, because Illinois received more profits from selling C & W shares than losses on the purchase of C & W securities.

Third, Illinois claims to have suffered a loss of $2.06 million *See* (Public Pension Fund Group's loss calculation, Ex. A to Holmes Decl.) However, the loss is based on the "first-in, first-out," ("FIFO") method of calculating losses, "in which specific sales are matched to specific purchases. Because such an approach encompasses purchases made *outside* the class period, courts have generally rejected FIFO as an appropriate means of

---

**6.** Only plaintiffs who purchased the defendant company's stock contemporaneously with the defendant's sale of the stock can succeed on a § 20(A) claim. *See In re MicroStrategy, Inc. Securities Litig.*, 115 F.Supp.2d 620, 661–64 (E.D.Va.2000). APPF's insider trading claim is based on the allegation that "defendants Petit and Lerwill sold shares of their Cable & Wireless stock contemporaneously with purchases made by one of the Public Funds, the West Virginia Investment Board." (Mem. Supp. Mot. to Appoint APPF as Lead Pl. and to Approve Lead Pl.'s Choice of Lead Counsel at 7.) As the only party to assert this claim, the Court holds that APPF's claims are not typical of the class. *See In re Drexel*, 960 F.2d at 291; *MicroStrategy*, 110 F.Supp.2d at 435–36.

calculating losses in securities fraud cases." *Weisz,* No. C 02–1200 SBA at *12 (emphasis added). *See also In re Clearly Canadian Sec. Litig.,* No C 93–1037 VRW, 1999 WL 707737 at *4 (N.D.Cal. Sept.3, 1999) "use of the 'first in, first out' method of pairing purchases and sales of shares will identify damages where in reality there may be none; the 'FIFO' assumption is in no way based on actual trading practices in general, let alone the trades of actual claimants.". The Court holds that APPF's loss is not as significant as alleged, because APPF used an unaccepted method of calculating its loss. Accordingly, APPF is not the presumptive lead plaintiff.

Fourth and finally, West Virginia sold all of its shares before the fraud allegedly perpetrated by C & W was revealed to the public. Accordingly, it follows that West Virginia could not have suffered any loss as a result of the Defendants' alleged fraud. *See Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.,* 74 F.Supp.2d 352, 361–62 (S.D.N.Y.1999) (movant's losses that occurred prior to disclosure of defendant's fraud are not, as a matter of law, recoverable). Because West Virginia sold all of its C & W shares before the alleged fraud became public, it fails to establish that its harm was caused by the Defendant's conduct. Without causation, West Virginia cannot prevail on its claims. Moreover, West Virginia would therefore have no standing to pursue its claims against the Defendants because its losses cannot be attributed to the Defendants.

For the reasons previously stated, the Court holds that Illinois and West Virginia collectively, filing as APPF, are subject to numerous and significant "unique defenses," which render it an inadequate plaintiff. Accordingly, its motion to be appointed lead plaintiff is denied.

## IV. SELECTION OF LEAD PLAINTIFFS COUNSEL

The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. 15 U.S.C. § 78u–4(a)(3)(B)(v); *see also Gluck v. CellStar Corp.,* 976 F.Supp. 542, 550 (N.D.Tex.1997) (holding that a Court should not disturb a proposed lead plaintiff's choice of lead counsel unless "necessary to protect the interests of the plaintiff class") (citing Conference Report on Securities Litigation Reform, H.R.Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 679, 734). Upon review of the record, the Court is satisfied that each co-lead plaintiff's selection of counsel is adequately competent and experienced in securities litigation to warrant their appointment as lead counsel in this case. The Court notes that with the appointment of co-lead plaintiffs and co-lead counsel, "there shall be no duplication of attorney's services and that the use of co-lead counsel will not in any way increase attorney's fees and expenses." *In re Oxford Health Plans,* 182 F.R.D. 42, 50.

## V. CONCLUSION

The Court recognizes that neither movant, standing alone, is a particularly ideal plaintiff. As such, subject to the Rule 23 analysis set forth above, the Court exercises its discretion to appoint Alex Osinski and the Ontario Teachers' Pension Plan as co-lead plaintiffs. The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will be adequately represented in this action. Lastly, each co-lead plaintiff's selection of lead counsel is approved by the Court.

Accordingly, for the reasons stated in this Memorandum Opinion, it is hereby

ORDERED that Alex Osinski's Motion to Be Appointed Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel is GRANTED;

ORDERED that the Ontario Teachers' Pension Plan's Motion to Be Appointed Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel is GRANTED;

ORDERED that Alex Osinski and the Ontario Teachers' Pension Plan shall serve as co-lead plaintiffs;

ORDERED that the American Public Pension Funds Motion to Be Appointed Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel is DENIED;

ORDERED that all expenses shall be financed equally by each co-lead plaintiff's firm.

The Clerk is directed to forward a copy of this Order to counsel.