Dr. Richard BASSIN, individually and on behalf of others similarly situated, Plaintiffs,

v.

DECODE GENETICS, INC., et al., Defendants.

Gianni Angeloni, individually and on behalf of others similarly situated, Plaintiffs,

v.

deCODE Genetics, Inc., et al., Defendants.

Janice Brown, individually and on behalf of others similarly situated, Plaintiffs,

v.

deCODE Genetics, Inc., et al., Defendants.

Alexander Selinger Hine, individually and on behalf of others similarly situated, Plaintiffs,

v.

deCODE Genetics, Inc., et al., Defendants.

Gail P. Gentily, individually and on behalf of others similarly situated, Plaintiffs,

v.

Dara Khosrowshahi, Julius deCODE Genetics, Inc., et al., Defendants.

Nos. 04 Civ. 7050(RJH), 04 Civ. 7067(RJH), 04 Civ. 7182(RJH), 04 Civ. 7361(RJH), 04 Civ. 8002(RJH).

United States District Court, S.D. New York.

Jan. 4, 2005.

David A. Rosenfeld, Cauley, Geller, Bowman & Rudman, LLP, Mellville, NY, for plaintiffs.

## MEMORANDUM OPINION AND ORDER

HOLWELL, District Judge.

Presently before the Court are five securities fraud actions brought against certain officers and directors of deCODE genetics, Inc. ("deCODE") and deCODE itself (collectively, the "defendants") on behalf of a purported class of investors who claim to have sustained losses arising out of defendants' alleged misrepresentations in press releases circulated from October 29, 2003 to August 26, 2004 (the "Class Period"). The first such class action was filed on September 1, 2004, and is captioned *Bassin v. deCODE genetics, Inc.*, 04 Civ. 7050(RJH) (S.D.N.Y., filed September 1, 2004). Notice was published that same day in the *Business Wire*, a national, business oriented newswire service, as re-

quired by 15 U.S.C. §§ 78u–4(a)(3)(A)(i). The other four actions followed. (hereinafter, the above-captioned actions are referred to as the "Actions").

Only one party has moved for consolidation, appointment as lead plaintiff, and to designate its selection of representation as lead counsel pursuant to the procedures set forth by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(a)(3)(B) ("PSLRA"). For the reasons set forth below, the Court hereby consolidates the actions, appoints Gary E. Bullock, Velma V. Bullock, June Snyder and James C. Manuola (collectively, the "Bullock Group") as Lead Plaintiff, and designates the firm of Lerach Coughlin Stoia Rudman & Robbins LLP ("Lerach Coughlin") as Lead Counsel.

## BACKGROUND

The complaint in the first, above-captioned action was filed by Dr. Richard Bassin on September 1, 2004. As noted, on that same day, Bassin's counsel, Lerach Coughlin Stoia Rudman & Robbins LLP, caused a notice to be published in *Business Wire* advising purchasers of deCODE stock that (1) a class action against defendants had commenced in the Southern District of New York; (2) the class included all plaintiffs who had purchased deCODE stock between October 29, 2003 and August 26, 2004; (3) the complaint asserted claims charging defendants with, *inter alia*, artificially inflating its stock price through alleged misrepresentations regarding continuing internal control problems that were eventually revealed in an August 24, 2004 8–K filed with the Securities and Exchange Commission ("SEC"); and (4) any class member wishing to serve as lead plaintiff and choose lead counsel was required to move the court within sixty days.

On November 1, 2004, the Bullock Group filed a motion to consolidate the Actions and appoint itself as lead plaintiff and Lerach Coughlin as lead counsel. That motion is presently before the Court.

## DISCUSSION

I. *Consolidation of the Actions*

The Bullock Group moved to consolidate the Actions pursuant to Rule 42(a) of

the Federal Rules of Civil Procedure; no other party in any related case has joined in or opposed that motion, or filed one of their own. Rule 42(a) provides that a court may order all actions consolidated if they involve "common issues of law or fact." Fed. R.Civ.P. 42(a). In determining the propriety of consolidation, district courts have "broad discretion" although they generally espouse the view that "considerations of judicial economy favor consolidation." *Ferrari v. Impath, Inc.*, 2004 WL 1637053, at \*2 (S.D.N.Y. July 20, 2004) (citations and quotations omitted). Moreover, consolidation is particularly appropriate in the context of securities class actions if the complaints are "based on the same 'public statements and reports' " and defendants will not be prejudiced. *Id.*, 2004 WL 1637053, at \*2 (quoting *Mitchell v. Complete Mgmt., Inc.*, 1999 WL 728678, at \*1 (Sept. 17, 1999)).

Each of the Actions implicates similar or overlapping claims under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"). The complaints rest on the same fundamental allegations that defendants made material misrepresentations regarding internal control problems that were ultimately revealed in the August 24, 2004 8-K deCODE filed with the SEC. *See In re Olsten Corp. Securities Litigation*, 3 F.Supp.2d 286, 292–93 (E.D.N.Y.1998) (consolidating cases despite slight differences in claims and alleged class periods). Accordingly, the Actions involve "common issues of law and fact" and are hereby consolidated.

## II. *Appointment of Lead Plaintiff*

### A. *The Notice and Filing Requirements Under the PSLRA*

As noted above, the Bullock Group has moved to be appointed as lead plaintiff. The PSLRA sets forth the procedures governing the appointment of lead plaintiff in "each action arising under the [Securities and Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1). As an initial matter, the PSLRA requires the plaintiff in the initial action to cause a notice to be published in a national, business-oriented publication within 20 days of filing the complaint. 15 U.S.C. § 78u–4(a)(3)(A)(i). The notice must inform mem-

bers of the purported class of (1) the details and pendency of the action; and (2) their right to seek appointment as lead plaintiff within 60 days after the date on which notice is published. *Id.* Within 90 days after the publication of such notice, a court shall consider any motion made by any class member, regardless of whether they are individually named as plaintiffs in any of the actions, and shall appoint the "most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i). Moreover, the PSLRA instructs courts to appoint lead plaintiff in a timely fashion after the consolidation decision has been rendered. *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii); *The Constance Sczesny Trust v. KPMG LLP, et al.*, 223 F.R.D. 319, 322 (S.D.N.Y.2004).

█ Dr. Bassin filed the first complaint and caused a notice to be published in *Business Wire* on September 1, 2004. That notice set forth the pendency of the action, the claims asserted therein, the purported class action period and the right of any class member to seek appointment as lead plaintiff. Accordingly, the notice satisfied the requirements of the PSLRA and triggered the sixty-day period in which class members could move to be appointed as lead plaintiff.

Only the Bullock Group filed such an application within the sixty-day period, which means that only the Bullock Group has satisfied the procedural requirements of the PSLRA. The Court will limit its consideration accordingly.

### B. *The Most Adequate Plaintiff*

█ In 1995, Congress enacted the PSLRA to address perceived abuses in securities fraud class actions created by lawyer-driven litigation. *Ferrari*, 2004 WL 1637053, at \*3; *see* H.R. Conf. Rep. No. 104–369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ("H.R. Conf. Rep. No. 104–369"). The PSLRA sought to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." *Ferrari*, 2004 WL 1637053, at \*3 (internal citations and quotations omitted). As such, Congress sought to encourage institutional investors

and other class members with large amounts at stake to step forward as the ideal lead plaintiffs in private securities litigation. *See* H.R. Conf. Rep. No. 104–369.

The PSLRA thus provides that the most adequate plaintiff has (1) "the largest financial interest" in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii). In light of the PSLRA's silence in prescribing a method for assessing a movant's financial interest, courts have examined several factors such as: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.,* 2004 WL 1179311, at *7 (S.D.N.Y. May 27, 2004) (quoting *Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, at *5 (N.D.Ill. Aug.11, 1997)); *The Constance Sczesny Trust,* 223 F.R.D. at 323; *Ferrari,* 2004 WL 1637053, at *4.

▪ The Bullock Group has submitted affidavits along with its moving papers in support of its claims that it has individually suffered the greatest financial loss, which it calculates to be $52,450.59. Without access to financial information from other parties, the Court is constrained to conclude that the Bullock Group's alleged loss best qualifies it to serve as lead plaintiff.

▪ However, the Bullock Group must also satisfy the requirements articulated in Rule 23. Rule 23 sets forth four prerequisites—universally referred to as numerosity, commonality, typicality and adequacy—to be considered in evaluating the propriety of class certification, although only the typicality and adequacy criterions are relevant to the selection of lead plaintiff. *The Constance Sczesny Trust,* 223 F.R.D. at 323–24. The Bullock Group's typicality is easily met here as his "claim arises from the same course of events" and "each class member makes similar legal arguments to prove the defendants' liability" even if there are minor variations in the factual allegations. *Id.* at 324 (internal citations and quotations omitted). The Bullock Group, like the other purported class members in this action, has asserted that it purchased deCODE stock during the class period and was injured by false and misleading representations made by defendants in violation of the 1934 Act.

Similarly, the Court is convinced that the Bullock Group "will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a). In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and experience of the proposed lead plaintiff, *Pirelli Armstrong Tire Corp.,* 2004 WL 1179311, at *20 (citing cases); (2) the qualifications of the proposed class counsel, *The Constance Sczesny Trust,* 223 F.R.D. at 324 (citing *In re Deutsche Telekom Ag Securities Litigation,* 229 F.Supp.2d 277, 282 (S.D.N.Y.2002)); and (3) any potential conflicts or antagonisms rising among purported class members. *In re Deutsche Telekom Ag Securities Litigation,* 229 F.Supp.2d at 282 (citations omitted).

The Bullock Group indicated in its certification that it is willing to assume the responsibilities of lead plaintiff and class representation. After reviewing the materials submitted by the Bullock Group, the Court is convinced that it will adequately represent the class even though it is not an institutional investor. *See Pirelli Armstrong Tire Corp.,* 2004 WL 1179311, at *22 (remarking that some courts have interpreted the PSLRA to favor heavily institutional investors); *In re Cable & Wireless, PLC Securities Litigation,* 217 F.R.D. 372, 376 (E.D.Va. 2003) ("the purpose of the PSLRA's selection-of-lead-plaintiff provision was to get institutional investors involved in the prosecution of securities class action suits").

The Court is aware that disagreements may arise throughout this action, and as such, reserves the right to modify this single lead plaintiff structure in the event that litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable. In the meantime, the action shall proceed with the Bullock Group as sole lead plaintiff.

### III. *Appointment of Lead Counsel*

▪ The Bullock Group has further moved to designate their selected law firm as lead

counsel, asking the Court to appoint Lerach Coughlin as lead counsel.

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. § 78u–4(a)(3)(B)(v). The resumes submitted by the Bullock Group indicate that Lerach Coughlin has served as lead counsel in several securities fraud class actions, and is otherwise well qualified and free of conflicts. Accordingly, the Court appoints Lerach Coughlin as lead counsel.

## IV. *Conclusion*

The Court consolidates the Actions, appoints the Bullock Group as lead plaintiff, and designates Lerach Coughlin as lead counsel.

SO ORDERED.